THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TRACY MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-20-410-R |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant State

Farm Fire and Casualty Company ("State Farm"). (Doc. No. 32) Plaintiff responded in

opposition to the motion. (Doc. No. 38). Defendant filed a Reply in support of its position.

(Doc. No. 40). Thereafter Plaintiff filed a Supplemental Response (Doc. No. 46) to which

Defendant filed a Supplemental Reply. (Doc. No. 49). Upon consideration of the parties'

submissions, the Court finds as follows.

Summary judgment is properly granted if the movant shows that no genuine dispute

as to any material fact exists and that the movant "is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive

claim. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 247, 248 (1986). The party seeking

summary judgment bears the initial burden of demonstrating the basis for its motion and

of identifying those portions of "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any," that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal

quotation marks omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated on other grounds by Eisenhour v. Weber Cnty*, 739 F.3d 496 (10th Cir. 2013)).

Plaintiff filed this action alleging breach of contract and bad faith with regard to his treatment by State Farm following damage to his home in Tulsa, Oklahoma in 2019. Plaintiff contends that State Farm improperly assessed the extent of the damage to his home caused by wind, a covered event, and that it improperly classified certain damage as wear and tear, which would not be covered. As a result, Plaintiff contends Defendant is in breach of the insurance policy it issued and that its actions, including its investigation of his claim, were undertaken in bad faith. Defendant seeks summary judgment on both the breach of contract and bad faith claims.

The State Farm homeowners policy at issue here included the following provisions:

**COVERAGE A - DWELLING**

We will pay for accidental direct physical loss to the property described in Coverage A, unless the loss is excluded or limited in **Section 1- LOSSES NOT INSURED** or otherwise excluded or limited in this policy.

\*\*\*

SECTION 1 LOSSES NOT INSURED

We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by . . .
(g) wear [and] tear. . . .
Losses are limited in certain capacities, and according to the Policy must exceed the applicable deductible.

\*\*\*

DEDUCTIBLE

In case of loss under this policy, we will pay, subject to the specified policy limits, only that part of the amount of the loss that exceeds the deductible amount shown in the Declarations.

(Doc. No. 32-1, pp. 9, 16, 18-19)

Plaintiff's home, most notably the roof, suffered damage in a March 13, 2019 windstorm. One week later, on March 20, 2019, Plaintiff filed a claim with his insurer, Defendant State Farm. Andrew Springer, a State Farm claims representative, spoke with Plaintiff who indicated that after the storm he found shingles scattered in his yard but denied any interior leaks.

On April 3, 2019, Ryan Linderman, a field adjuster working for State Farm, inspected the insured property. Plaintiff and an unidentified contractor were present. Mr. Linderman's notes to the claim file indicate the roof is "in very good condition" although he reported finding three wind-damaged shingles on the right slope and twelve on the rear slope. The fifteen wind damaged shingles were, in his opinion, repairable. His report indicates that he did not find any wind damage on the front or left slopes or to the front, right, and left elevations of the home.[1] The claim file indicates:

---

[1] The claims file indicates wind damage to a screen on the rear of the home. (Doc. No. 32-1, p. 7).

> Estimate completed for repair. Loss below deductible. Provided PH with copy of estimate and explained loss below deductible. PH became upset and stated that roof is old and should be replaced. ACH explained that roof is in good condition and is repairable. PH stated that he is tired of repeated filing claims for wind damage and will be calling his agent. No further actions, will close claim.

(Doc. No. 32-1, p. 7). Contact between Plaintiff and State Farm ceased until August 10, 2019, when Plaintiff, via public adjuster Jeff Brown, contacted State Farm via email. Mr. Brown submitted an estimate to State Farm of $27,936.04 for replacement of Moore's roof. As a result of the communication from Mr. Brown, State Farm scheduled a second inspection, which was conducted by field adjuster Jason Smoot on August 26, 2019. The claims file describes the inspection.

> Dwelling Roof is a 1 layer 17 yr old 3 tab shingle roof with minor wind damages on back slope, PA send in for a 2nd inspection stated the whole roof needs to be r/r, this is a wind event only, was pulling up loose tabs and stated its wind damaged. I told him 3 tab shingle pop there (sic) tabs all the time, part of the weathering process, PA stated there was shingle transfer from the top shingle to the bottom due to wind, explained to him this part of the weathering process, shingles are not missing and broken backs, no change in estimate.

(Doc. No. 32-1, p. 6). Plaintiff's public adjuster and State Farm employees had a number of follow up conversations wherein State Farm reiterated its position that the roof was repairable and that the damage thereto did not exceed the deductible.[2] Mr. Brown also

---

[2] For example, on September 6, 2019, the claims file indicates:

> Jeff called in and had sent many photos to us. He is still very frustrated that he feels there were two very quick inspections. He would like to continue to talk with the CO. Jeff was an independent adjuster for years and really feels that he is being denied because he is a PA. He wants to talk with a manager but he will be out of town attending CE classes and so he will call back on 9/16. He really wants a manager to review all of the photos with him so he can further discuss why he feels that there is more damage than what we have approved.

(Doc. No. 32-1, pp. 3-4).

authored a scathing August 29, 2019 email to State Farm accusing the insurer of negligence and bad faith in its investigation of Moore's claim.

State Farm referred the claim back "to the field" where it was assigned to claims specialist Mike Hopkins.[3] Mr. Hopkins retained an outside engineering firm, Donan Engineering, to evaluate the roof. The evaluation never occurred, however, because Donan policy prohibited the recording of its employees conducting inspections and Plaintiff's private adjuster, Jeff Brown, was adamant in his resolve to record the proceedings. "PA confirmed he would not make a change in his decision to record the engineer. PA proceeded to request a letter from State Farm citing a valid reason the inspection not be recorded and he would consider it." (Doc. No. 32-1, p. 3). State Farm cancelled the engineering inspection and closed the claim based on its initial appraisal that the damage did not exceed Plaintiff's deductible. (*Id.* p. 2). Plaintiff filed this suit alleging that Defendant breached the contract of insurance and that its actions, including the faulty investigation of Moore's claim, constituted bad faith. Defendant seeks summary judgment on both of Plaintiff's claims and with regard to his request for punitive damages on the bad faith claim.

In Oklahoma, general principles of contractual interpretation govern the construction of an insurance policy. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). The elements of a breach of contract claim under Oklahoma law are: "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach." *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018). State Farm contends

---

[3] Andrew Springer, who was originally assigned to the claim, left State Farm sometime between August 30 and September 6, 2019. (Doc. No. 38-4, p.. 8).

5

it is entitled to summary judgment on Plaintiff's breach of contract claim because: (1) the policy expressly excludes damage caused by wear and tear; and (2) even where coverage exists, State Farm's obligation to pay is limited in that its obligation is to pay the loss to the extent it exceeds Plaintiff's $1,317.00 deductible.

The Court finds that genuine issues of material fact remain for resolution at trial regarding the extent of the damage to Plaintiff's roof as a result of wind on or about March 13, 2019. Defendant concedes there was covered wind damage. Defendant and Plaintiff present competing evidence regarding the nature and cause of damage and whether it exceeds the deductible under Plaintiff's policy. Therefore, summary judgment is inappropriate.

Defendant also seeks summary judgment on Plaintiff's bad faith claim. Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Christian v. Am. Home Assurance Co*., 577 P .2d 899, 904 (Okla. 1977). To establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co*., 6 F.3d 1431, 1436 (10th Cir.1993).

The duty is not breached if the insurer refuses to pay a claim or litigates a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is reasonable and legitimate. *Southern Hospitality, Inc. v. Zurich American Ins. Co.*, 393 F.3d 1137, 1142 (10th Cir. 2004). That is*,* "[t]he insurer will not

6

be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'"

*Oulds,* 6 F.3d at 1436 (quoting *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.,* 841 P.2d 568, 572 (Okla.1992)).

> In order to succeed on a claim for bad faith, the claimant must be able to prove that the insurer's actions wend beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damage in a bad faith claim. [*Ozment v. Amer. Cas. Prop. & Cas. Co.*, 2013 WL 3179522, *5 (N.D. Okla. 2013).

*Hamilton v. Northfield Ins. Co.*, No. 16-civ-519-RAW, 2017 WL 2656150, * 2 (E.D. Okla. June 20, 2017). Plaintiff's bad faith claim rests largely on his contention that Defendant's investigation was unreasonable.

In determining whether to pay a claim, an insurer must conduct an investigation "reasonably appropriate under the circumstances." *Willis v. Midland Risk Ins. Co.,* 42 F.3d 607, 612 (10th Cir.1994) (quoting *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109 (Okla.1991)). The insurer's actions are reviewed in light of the facts it knew or should have known at the time it was asked to perform under the contract. *Oulds,* 6 F .3d at 1437. "If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Willis,* 42 F.3d at 612. "[W]hen a bad faith claim is premised on inadequate investigation, the insurer must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 345 (10th Cir. 1995).

The Court finds that even construing all facts in a light most favorable to Plaintiff, he has failed to present evidence that shows Defendant acted in bad faith in assessing his claim. State Farm inspected Mr. Moore's roof twice, once with Plaintiff's roofer and once with his public adjuster. Defendant took photographs during these inspections. Although Defendant canceled the engineering inspection because Plaintiff's representative insisted on filming the inspection, contrary to the policies of the engineering firm, Plaintiff has not shown in the absence of such inspection "that material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake Constr. Co.,* 71 F.3d at 345 (10th Cir. 1995). At bottom, the parties have a dispute about how much damage the wind caused to Plaintiff's roof. The evidence presented as to the causation of damage to Plaintiff's roof presents no additional information not considered by Defendant.[4]

Having concluded that Defendant is entitled to summary judgment on Plaintiff's bad faith claim, the Court concludes that Plaintiff is not entitled to recover punitive damages.

For the reasons set forth herein, Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

---

[4] Plaintiff complains that Defendant failed to consider the difference in the state of his roof at the inception of the Policy in 2010 and during 2016 when he filed a prior wind damage claim. Although the prior state of the roof is not wholly irrelevant to Plaintiff's claim, it does not provide a basis for concluding that the alleged damage in 2019 was solely the result of the March 2019 windstorm. However, pre-loss condition of a roof, while instructive, is not dispositive of the roof condition at the time of the loss. *Aduddell Lincoln Plaza Hotel v. Certain Underwriters at Lloyd's of London*, 348 P.3d 216, 221 (Okla. Civ. App. 2014). The conditions at those times may limit Defendant's ability to argue improper installation of the roof, but the issue is not *de facto* bad faith.


**IT IS SO ORDERED** this 7th day of September 2021.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE